And that's all that was said. Sounds as though they did get in touch with their lawyer. They filed a lawsuit. Well, they certainly did get in touch with their lawyer at that time, after they filed the lawsuit, of course. And even though they hadn't bothered to serve the university properly under the Geneva Convention, And there was some sharp practice involved with respect to how come the court took jurisdiction at all at that time. Now, is that question still preserved, or is that off the table? Well, it shows what the setting was. How come did the court issue an order to show cause why Hebrew University had not been served by serving its license against it? That came about because in my telephone conversation with opposing counsel, I pointed out there had been no service, and therefore we had a conversation about this, and counsel informed me that, well, at this initial conference with the district court, that it would be pointed out that the Hebrew University had not been served pursuant to the Geneva Convention. But the end product of that was, and not because I didn't make a special appearance, the university was being served. That created a lot of litigation. Okay. Let me ask you this. If we had, if electronic arts had waited longer, if they had waited for a lawsuit to be filed, or almost ready to be filed by Hebrew University, assuming Hebrew University would have gone further and done that, would we have any different factual setting, or would the legal dispute about the facts be any different? It's kind of a ripeness question. What more might we have learned, if anything, about the nature of this litigation? Well, if Hebrew University had sued, it would have sued under Section 3341.1. Or, and this is even more likely, under the New Jersey common law, because Dr. Einstein was a domicilee of New Jersey when he died, and his will was probated, and it was the will probated in New Jersey that gave the intellectual property rights to Hebrew University. So there would be a lot of different places in which all this could take place. And, of course, But I think what Judge Fletcher is trying to ascertain is, again, in terms of a case for controversy, where we want to know whether the issues that are sufficiently sharpened to be litigable, has anything changed, would anything change with regard to the underlying dispute, if they had waited until there was an explicit, as opposed to a vague or implicit, suggestion of litigation? Well, I can't answer the question specifically, because we don't know what would have been alleged. But it is undoubted that Electronic Arts was extremely eager to bring a lawsuit, to have a federal court declare that whatever it wanted to do with anybody's celebrity persona, it could do with impunity because it was all protected by the First Amendment. That was the motivation. And at the same time, Hebrew University would have contested that, to be sure. In short form, it seems to me their answer is no, that the underlying dispute wasn't going to change. Oh, no, the underlying dispute was never going to change. The underlying dispute has changed here because Electronic Arts wants to say that it is entitled to attorney's fees under Section 3341, 3344.1, and that is incorrect because their lawsuit was not brought under that statute at all. It was brought in its own specific terms invoking the First Amendment of the United States Constitution and, quote, California law, close quote. 3344.1 gave no rights and no safe harbor whatsoever to Electronic Arts. None. Did it provide a cause of action against Electronic Arts? Yes. That's what they say they were afraid of. They were trying to get a declaration of the cause of action against them under 3344.1. I'm sure they were quivering in their boots because Electronic Arts is a multimillion-dollar corporation and Hebrew University is located in a foreign-believed country. Let me ask it this way. A nonprofit. Let me ask it this way. If Hebrew University had filed suit against Electronic Arts under 3344.1 and if Hebrew University had lost that lawsuit, would attorney's fees be available against Hebrew University? Yes, because the statute says so specifically. Yes. Okay. But that's the sole basis. Once we know that, why shouldn't we read the statute to allow a would-be defendant, who if sued and who if prevailed would get attorney's fees, to anticipate the suit that they're afraid of and then come into court and litigate precisely the same matter that would have been sued had they been a defendant and if they win, get attorney's fees just as they would have gotten it had they been sued? Well, it's very clear that the patients who are being protected under 3344.1 are only the holders of the publicity rights of the deceased celebrity. Is that the definition or from whence do you get the conclusion that that's what it means to bring a suit under a statute, that you are claiming rights under the statute as opposed to claiming a or litigating the application of the statute to a particular set of facts? Well, in the first place, the lawsuit that was brought was not brought under Section 3344.1. All right. That's a kind of different problem. I mean, and I don't understand to have been litigated that way. I mean, that's a pleading problem that they didn't plead 33? It's not only a pleading problem. It's what the statute says. The statute gives no rights, it gives no safe harbor to anyone who wants to use the persona of a deceased celebrity. Oh, that's a substantive question, isn't it? But the substantive question determines also what the ---- I mean, it's a substantive question of whether they have a safe harbor. They're claiming they have a safe harbor. You're claiming they don't have a safe harbor. That's what the statute says. The statute gives rights in specific terms only to those persons who fall exactly within its definition. And as it says, the rights under this section are property rights. Well, freely transferable in whole or in part by contract by means of trusted testamentary documents, whether the transfer occurs before the death of the deceased personality and so on. I see. So what you're saying is not that they aren't covered by the safe harbor provision necessarily, but that if they were, it wouldn't be a property right. Well, it's both. It's not a safe harbor position for those who want to use rights of deceased celebrities. It's a limitation on those who are ---- can claim rights against under 3344.1. Now, of course, it's a fascinating question that you needn't get into at all, and that's the question whether or not the legislature intended to include electronic games when it talked about entertainment and so forth before electronics had come out of the baby bassinet. Such games didn't exist. What the big fight was about was the entertainment business, primarily movies, entertainment personalities at the time. But there's no reason for the court to reach that issue. The question presented here is what is in that complaint that invokes any protection to a would-be user of a deceased celebrity? The only thing that happens is there is a risk placed on the holder of the rights to bring suit that if that suit is brought by the owner of the rights, then that owner takes the risk if that owner loses to have to pay attorney's fees for the winner in that 33411 suit. I'm having trouble making the language as narrow as you would like it to be because the language of the statute, the attorney's fee sentence, talks about an action under this section. It doesn't say, for example, an action arising under this section. It doesn't say an action brought by the property holder under this section. It just says an action under this section. That's pretty vague. Well, it's no different, I think, legally from what the Supreme Court of California addressed in Filarski. But in Filarski, and I want to make sure that we get before the end to the question of what if we did think that these were available, what do we do about this? There's a catalyst problem here in Buchanan and all that. I beg your pardon. We'll clear the last of your questions. But the Filarski was a case in which the statute itself addressed declaratory judgments. Yes. It seems to me to really be a sea clamorous kind of a theory. It's basically when the statute, when the legislature has created a scheme for a certain kind of cause of action, you don't go dragging in a more generic one. Here, we don't have that. We don't have a statute which directly addresses the question of who and when people can bring declaratory judgment actions. But the similarity is very strong here. In Filarski, the way the statute was created, only the general public was given any right to bring the action. Here. Specifically. The statute said that. This statute doesn't say that. It doesn't say who can bring an action. It says nothing about who can bring an action. You read the statute to see who is given the right of action. It doesn't say that. It says who's liable. It doesn't say who has a right to bring a lawsuit. Well, in terms of 3344.1, when the statute is written to give rights to the owners of the right of publicity, it doesn't give rights to anybody else. Nobody. But that, of course, is true. But that maybe proves too much because the statute also says that if the property owner brings suit to enforce what he or she thinks is the property right under 3344.1 and loses, they lose attorney's fees. That's right. So it's not designed only to protect them in a sense or protect their substantive right and give them attorney's fees if they win. No. Once that lawsuit is commenced, whoever wins gets attorney's fees. I don't disagree with that. But I don't think it changes the point in terms of who has what right and what kind of action is brought under. That's the question. And the Electronic Arts case was not brought under Section 3341. Do you think this case is answered by the specific terms of the complaint? Let me finish, please. Was the Electronic Arts filed or do we have to look at the generality of the statute? You have to look at both. What did the complaint say? I looked at the complaint. It says at the start it's a declaratory judgment complaint. In fact, it says it wants relief under 3341.1. What it wants by way of relief, it has to support by what its allegations are in its plea. And it has not alleged that there's – that it has a right under 3344.1. What I wanted to ask is if we were to conclude that fees were available under the statute, the – I gather that you are not conceding that if fees were available that Electronic Arts is a prevailing party entitled to fees. No. In the first place, they're not a prevailing party if you ever get that far. Right. They did not – Electronic Arts did not get what it sought. The district court hasn't decided this question. Is that right? No. And if the court should decide that there was subject matter jurisdiction, that there was an action brought by Electronic Arts under section 3344.1, then the only alternative for this court to do the job right is to remain the case to the district court because the necessary underpinnings for the subsequent determinations have not been laid below. If there are no other questions, I will submit on, I think, what our very extensive briefing of all the issues. Thank you. Thank you. Thank you very much. You've saved some time to argue another point. Yes, and to reply briefly on our appeal. The notion that there is no safe harbor under section 3344.1 is simply wrong. If one reads subsection A2, it says expressly that for purposes of this subdivision, a play, book, magazine, et cetera, is not within the statute if it is an audiovisual work of fictional entertainment. That's one of the examples. Our complaint describes the products at issue here as audiovisual works of fictional entertainment. Excerpt of record, page 2, line 6. Whatever that is, it's a merits issue, isn't it? Pardon me? Isn't that a merits issue, whether you come within this provision or not provision? My understanding was that Ms. Huffsteller was really not arguing about whether you came within it or didn't come within it, but whether it was properly denominated a safe harbor or not denominated a safe harbor. I think both points were the first point was raised that there was no safe harbor. There clearly is the idea that our complaint doesn't invoke Section 3344 is also wrong because it expressly describes the product in exactly the words of 3344.1A2. Not only that, it mentions 3344.1. The argument was also made that the only people protected under 3344.1 are the rights holders. The only people protected under the Copyright Act are the copyright holders. But that doesn't mean that an action for declaratory relief invoking and requiring interpretation of the Copyright Act is not an action under it. The suggestion was made several times that Electronic Arts was anxious to sue Hebrew University, a university in Jerusalem. The record is clear that Electronic Arts did not pick this fight. Electronic Arts got a letter saying that it was infringing rights. It got phone calls that said unless you pay a big royalty, we're going to sue you. It believed those. Not exactly. Not exactly. Right. Well, what it said, what the phone call said is that unless you pay a royalty that is satisfactory to us, we're going to turn this over to our aggressive litigators. That sounds an awful lot like the language in the EMC versus Norland case, which the court found wasn't expressed an explicit threat of litigation. The suggestion was also made that this case really doesn't arise under California law, because if Hebrew University had sued, it would have sued under New Jersey common law. It couldn't. Civil Code Section 3344.1 says that it is the exclusive basis for suits for alleged infringement of deceased personality likenesses for action for conduct which occurs in California. And it cannot exclude New Jersey law if New Jersey law by its own force operates within California, unless for some reason it would violate the full faith and credit clause to allow New Jersey law to do that. So California law can't tell New Jersey how far New Jersey law extends. No, the California can apply California law, which is what the court in Cairns said. There it said that the law, the domicile determines whether there is a protectable right at all and who owns it. But how you deal with that right. I'm not sure you need this argument to prevail, but I'm also not sure that the wording of 3344 necessarily means that New Jersey law cannot apply. Well, I think Hebrew University probably agrees with us, because when it suits Fisher Scientific two months after this case was filed, it did so not under New Jersey law, but under 3344.1, because that is actually the law in California. I think that that grants the right protects the right and authorizes the lawsuit that we anticipated would be filed against us. And that Fisher Scientific, that's a somewhat different question. Unless the panel has questions, I think one of the problems in preparing for the argument is I thought the briefs were very thorough. So unless the court has other questions, I'm happy to rest on the briefing. The briefs were thorough and the argument very helpful. The only other point I would like to make one final point. I don't want to forget it. The suggestion was made that this court should not reach the issue of prevailing party where it is a matter of where the facts are not disputed. It is a matter of law. And I think the two issues that were addressed in the briefs, whether who is a prevailing party and whether a fee award is mandatory or discretionary would be most useful to the parties. But the prevailing party law in California at this moment is in somewhat flux, is it not? Because there is a California Supreme Court case pending. I mean, I may not write about that. Not that I'm aware of. I think the California determination of who is a prevailing party. I thought the California Supreme Court has granted hearing on the question of whether the Buchanan theory applies under California law. I'm not aware of that. The state of the law, as far as I know today, is as it's been since both versus Garamendi and all the other cases. We saw it. It's a very pragmatic test. And I think under pragmatic. I think the California Supreme Court is granted a hearing. It hasn't changed the law yet. And I don't know that it will subject to that. We'll submit on the briefs. Thanks to both sides for a very useful argument. The case of Electronic Arts versus Hebrew University of Jerusalem is now submitted for decision. The next case on my argument calendar is Romstad versus Contra Costa County. Twenty minutes per side.
judges: T.G.nelson, W.fletcher, M. Berzon